UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | |
|---|---|
| JOSE COLORADO, § | |
| § | |
| Plaintiff, § | |
| § | |
| v. § | CIVIL ACTION NO. 3:21-CV-0077-B |
| § | |
| WILMINGTON SAVINGS FUND § | |
| SOCIETY, FSB, D/B/A CHRISTIANA § | |
| TRUST, NOT INDIVIDUALLY BUT AS § | |
| TRUSTEE FOR PRETIUM MORTGAGE § | |
| ACQUISITION TRUST, § | |
| § | |
| Defendant. § | |

## MEMORANDUM OPINION AND ORDER

Before the Court is Defendant Wilmington Savings Fund Society, FSB, d/b/a Christiana Trust, not individually but as Trustee for Pretium Mortgage Acquisition Trust ("Defendant")'s Motion for Summary Judgment (Doc. 10). Plaintiff Jose Colorado has not responded to Defendant's Motion for Summary Judgment and his time to do so has passed. For the reasons that follow, the Court **GRANTS** Defendant's motion.

### I.

### BACKGROUND[1]

This lawsuit arises from Defendant's attempted foreclosure of a deed of trust encumbering the real property located at 3515 Espanola Drive, Dallas, Texas 75220 ("the Property"). Doc. 11, Def.'s Br., 1. On or about April 19, 2001, Plaintiff obtained title to the Property, and a warranty deed

---

[1] Unless otherwise specified, the Court derives these facts from Defendant's Motion for Summary Judgment and corresponding briefing.

with vendor's lien was recorded ("Warranty Deed"). *Id.* at 2; Doc. 10, Def.'s Mot., Ex. 1-3. Plaintiff also executed a Deed of Trust for the benefit of Countrywide Home Loans, Inc. ("Countrywide") securing a $79,273.00 loan against the Property, which was recorded on April 19, 2001. Doc. 11, Def.'s Br., 2; Doc. 10, Def.'s Mot., Ex. 1-2.

The beneficial interest in the Deed of Trust has since been transferred from Countrywide to Defendant. Doc. 11, Def.'s Br., 2; Doc. 10, Def.'s Mot., Ex. 1-3. Although the loan was previously insured by the United States Federal Housing Administration ("FHA"), the FHA terminated its insurance policy on January 31, 2015. *See* Doc. 11, Def.'s Br., 2–3; Doc. 10, Def.'s Mot., Ex. 1-4. During the times relevant to this matter, Rushmore Loan Management Services, LLC ("Rushmore") and Selene Finance, LP ("Selene") provided mortgage servicing functions for Defendant in relation to Plaintiff's loan. Doc. 10, Def.'s Mot., Ex. 1, ¶ 2; Ex. 2, ¶ 2.

On October 28, 2019, Rushmore mailed to Plaintiff, at his last known address, a notice of default and intent to accelerate ("Demand") via certified mail, informing Plaintiff of the amount necessary to cure the default and giving Plaintiff more than twenty days to perform the cure. Doc. 11, Def.'s Br., 3; Doc. 10, Def.'s Mot., Ex. 2-1. In his Original Petition, Plaintiff contends that he did not receive the Demand, and thus did not respond within the required time frame. *See* Doc. 1, Notice of Removal, Ex. 3-1, ¶ 25. Nevertheless, on November 18, 2020, Defendant, through foreclosure counsel, mailed to Plaintiff, via certified mail at his last known address, a notice that the balance of his loan had been accelerated. Doc. 11, Def.'s Br., 3; Doc. 10, Def.'s Mot., Ex. 1-5.

On March 24, 2020, Rushmore mailed Plaintiff a proposed Trial Modification Agreement ("TMA"), which, if accepted, would suspend any foreclosure action and permanently modify Plaintiff's mortgage. *See* Doc. 11, Def.'s Br., 3; Doc. 10, Def.'s Mot., Ex. 2-2. To accept the

modification offer, the TMA required that Plaintiff make an initial payment of $28,000.00 within fourteen days of the letter, and then make three additional trial period payments. *See* Doc. 11, Def.'s Br., 3; Doc. 10, Def.'s Mot., Ex. 2-2. Although Plaintiff avers that he made the initial $28,000.00 payment, as well as three subsequent payments of $1,425.00, *see* Doc. 1, Notice of Removal, Ex. 3-1, ¶ 10, Rushmore contends that it never received an executed copy of the TMA or any of the required payments under the TMA's terms. Doc. 11, Def.'s Br., 3. On May 19, 2020, Rushmore informed Plaintiff via letter that the TMA was withdrawn. Doc. 11, Def.'s Br., 3; Doc. 10, Def.'s Mot., Ex. 2-3.

On January 4, 2021, Plaintiff filed this lawsuit in Texas state court to prevent the foreclosure of the Deed of Trust, asserting the following claims against Defendant: (1) violations of the CARES Act; (2) violations of the Texas Property Code; and (3) breach of contract. Doc. 1, Notice of Removal, Ex. 3-1; Doc. 11, Def.'s Br., 1. Defendant removed the case to this Court on January 12, 2021, invoking the Court's diversity jurisdiction. Doc. 1, Notice of Removal, 1.

After Plaintiff failed to prosecute his claim in this Court, Defendant filed the instant motion on July 16, 2021, asking the Court to grant summary judgment and dismiss Plaintiff's causes of action with prejudice. Doc. 11, Def.'s Mot., 10. Plaintiff did not respond to the motion by the appropriate deadline pursuant to Local Rule 7.1(e) and the Court ordered Plaintiff to show cause why he failed to timely respond. *See* Doc. 12, Electronic Order. Plaintiff then filed a Motion for Continuance, requesting an additional three weeks to respond to Defendant's motion. Doc. 13, Pl.'s Mot., 1. On August 13, 2021, the Court granted Plaintiff's Motion for Continuance, setting the deadline for September 3, 2021, and instructing that the Court would not consider any responses filed after the deadline. *See* Doc. 14, Electronic Order. Plaintiff failed to respond by the new deadline. Doc. 14, Electronic Order. The motion is ripe for review.

## II.

## LEGAL STANDARD

Federal Rule of Civil Procedure 56(a) provides that summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The substantive law governing a matter determines which facts are material to a case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The summary-judgment movant bears the burden of proving that no genuine issue of material fact exists. *Latimer v. Smithkline & French Lab'ys*, 919 F.2d 301, 303 (5th Cir. 1990). Usually, this requires the movant to identify "those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (quotation marks omitted).

Once the summary-judgment movant has met this burden, the burden shifts to the nonmovant to "go beyond the pleadings and designate specific facts" showing that a genuine issue exists. *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (per curiam) (citing *Celotex*, 477 U.S. at 325). "This burden is not satisfied with 'some metaphysical doubt as to the material facts,' by 'conclusory allegations,' by 'unsubstantiated assertions,' or by only a 'scintilla' of evidence." *Id.* (citations omitted). Instead, the nonmoving party must "come forward with specific facts showing that there is a genuine issue for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (emphasis and quotation marks omitted).

"[C]ourts are required to view the facts and draw reasonable inferences 'in the light most favorable to the party opposing the summary[-]judgment motion.'" *Scott v. Harris*, 550 U.S. 372, 378

(2007) (alterations in original) (citation omitted). But the Court need not "sift through the record in search of evidence to support a party's opposition to summary judgment." *Ragas v. Tenn. Gas Pipeline Co.*, 136 F.3d 455, 458 (5th Cir. 1998) (citation and quotation marks omitted). If the nonmovant is unable to make the required showing, the Court must grant summary judgment. *Little*, 37 F.3d at 1076.

## III.

## ANALYSIS

The Court addresses Plaintiff's claims in turn and determines that summary judgment for Defendant is proper on each. The Court therefore dismisses each claim with prejudice.

A.   *Plaintiff's CARES Act Claim*

Plaintiff alleges that Defendant's attempted foreclosure violates the Coronavirus Aid, Relief, and Economic Security Act ("the CARES Act"). Doc. 1, Notice of Removal, Ex. 3-1, ¶¶ 19–21. The CARES Act places a foreclosure moratorium on federally backed mortgages. *See* 15 U.S.C. § 9056(a)(2), (b)(1). Thus, the issue is whether Defendant unlawfully foreclosed on Plaintiff's federally backed mortgage.

Defendant asserts that the FHA terminated its insurance on Plaintiff's loan on January 31, 2015, and that the Secretary of HUD was the mortgagee of record for only four days in 2015. Doc. 11, Def.'s Br., 5–6; Doc. 10, Def.'s Mot., Ex. 1-4; Ex. 1-3, 2–3, 4–5. According to Defendant, this means "there is no viable basis" for Plaintiff to claim that attempted foreclosure of his loan violates the CARES Act. Doc. 11, Def.'s Br., 6. The Court agrees.

The CARES Act requires the existence of a federally backed mortgage. *See* 15 U.S.C. § 9056(a)(2), (b)(1), (c). That a loan was once federally backed does not render the CARES Act

applicable to the loan when it is no longer backed by the federal government. *See* 15 U.S.C. § 9056(a)(2); *Wilmington Sav. Fund Soc'y, FSB v. Clay*, 2020 WL 6544242, at *3 (D.N.M. Nov. 6, 2020) ("Borrowers' mortgage loan is no longer federally backed by FHA insurance . . . [h]ence, the CARES Act's provision . . . does not apply in this case as a matter of law."). Because the loan at issue has not been federally backed by FHA insurance since January 31, 2015, Plaintiff's claim that foreclosure of the loan is in violation of the CARES Act fails as a matter of law.

Accordingly, the Court **GRANTS** summary judgment in favor of Defendant on Plaintiff's CARES Act claim and **DISMISSES** the claim **WITH PREJUDICE**.

B.   *Plaintiff's § 51.002 Claim*

Plaintiff next asserts a claim under § 51.002 of the Texas Property Code ("TPC"), alleging that Defendant failed to "send the 20 day notice to cure letter and . . . the subsequent notice of acceleration" to Plaintiff. Doc. 1, Notice of Removal, Ex. 3-1, ¶¶ 24–25. Defendant argues that Plaintiff's claim fails because § 51.002 "contains no language or provision creating a private cause of action" and because "even if a private cause of action did arise under § 51.002, Defendant[] complied with the requirements thereunder." Doc. 11, Def.'s Br., 6–7. The Court agrees.

To start, "[u]nder Texas law, there is no independent cause of action for breach of section 51.002." *Anderson v. CitiMortgage Inc.*, 2014 WL 2983366, at *5 (E.D. Tex. July 2, 2014); *see, e.g.*, *Ashton v. BAC Home Loans Servicing, L.P.*, 2013 WL 3807756, at *4 (S.D. Tex. July 19, 2013) ("This Court has not found any cases that interpret section 51.002 to establish an independent right of action for damages. The section also does not contain its own enforcement mechanism."); *Solis v. U.S. Bank, N.A.*, 2017 WL 4479957, at *2 (S.D. Tex. June 23, 2017) ("Section 51.002 of the [TPC] . . . does not provide a private right of action."). Instead, "courts have construed claims for violation

of section 51.002 as claims for wrongful foreclosure." *Carey v. Wells Fargo, N.A.*, 2016 WL 4246997, at *3 (S.D. Tex. Aug. 11, 2016) (collecting cases).

The elements of a wrongful-foreclosure claim are "(1) a defect in the foreclosure sale proceedings; (2) a grossly inadequate selling price; and (3) a causal connection between the two." *Martins v. BAC Home Loans Servicing, L.P.*, 722 F.3d 249, 256 (5th Cir. 2013). As Defendant has pointed out, Plaintiff cannot satisfy the first element of a wrongful foreclosure claim.

Plaintiff contends that a defect in the foreclosure sale proceedings existed because Defendant failed to send the required notices in accordance with § 51.002. *See* Doc. 1, Notice of Removal, Ex. 3-1, 7. In its Motion for Summary Judgment, Defendant responds that "Plaintiff was mailed all pre-foreclosure notices" as the TPC requires. Doc. 11, Def.'s Br., 7.

Under Texas law, "[s]ervice of notice is complete when the notice is sent via certified mail. . . . There is no requirement that [Plaintiff] receive the notice." *See Martins*, 722 F.3d at 256 (citing Tex. Prop. Code Ann. § 51.002(e)); *see also Dixon v. Bank of N.Y. Mellon*, 2014 WL 2991742, at *7 (N.D. Tex. July 3, 2014); *Santiago v. BAC Home Loans Servicing, L.P.*, 20 F. Supp. 3d 585, 590 (W.D. Tex. 2014). Thus, to defeat Plaintiff's wrongful foreclosure claim, Defendant need only establish that it sent the notices to Plaintiff via certified mail. Defendant has established this by providing competent evidence that Rushmore mailed a notice of default and intent to accelerate to Plaintiff's last known address, via certified mail on October 28, 2019. Doc. 10, Def.'s Mot., Exs. 2, 2-1 (Affidavit of Rushmore).

Further, Plaintiff received complete notice a second time, on or about November 18, 2020, when "Wilmington, through counsel, mailed to Borrower, at his last known address, via certified mail, a notice informing Borrower that the balance of his loan had been accelerated." Doc. 10, Def.'s

Mot., Ex. 1, 4 (Affidavit of Selene). Therefore, Defendant provides competent, unrebutted evidence to show that notice was properly served on Plaintiff pursuant to § 51.002.

Plaintiff does not allege any other defect in the attempted foreclosure than the lack of notice. *See* Doc. 1, Notice of Removal, Ex. 3-1, 4–7. Accordingly, the Court **GRANTS** summary judgment in favor of Defendant on Plaintiff's § 51.002 claim and **DISMISSES** the claim **WITH PREJUDICE**.

C.  *Plaintiff's Claim for Breach of Contract*

Defendant seeks summary judgment on Plaintiff's claim for breach of contract. Doc. 11, Def.'s Br., 7. Plaintiff alleges that he "signed and sent back the offer for the [TMA] and began making the . . . payments . . . including a $28,000.00 . . . payment via cashier's check," and that Defendant breached the TMA by "not now honor[ing] the agreement, in spite of Plaintiff's performance." Doc. 1, Notice of Removal, Ex. 3-1, 7. In turn, Defendant argues that because Plaintiff did not perform or tender performance according to the terms of the TMA, Plaintiff's claim that Defendant breached the contract has no viable basis. *See* Doc. 11, Def.'s Br., 8. The Court agrees with Defendant.

Under Texas law, the elements of a breach-of-contract claim are: "(1) the existence of a valid contract; (2) performance or tendered performance by the plaintiff; (3) breach of the contract by the defendant; and (4) damages sustained by the plaintiff as a result of the breach." *Smith Int'l, Inc. v. Egle Grp., LLC*, 490 F.3d 380, 387 (5th Cir. 2007) (quoting *Valero Mktg. & Supply Co. v. Kalama Int'l, LLC*, 51 S.W.3d 345, 351 (Tex. App.—Houston [1st Dist.] 2001, no pet.)). To prove an action for breach of contract, a plaintiff must first establish the existence of a valid contract, "the elements of which include 'an offer' and 'an acceptance in strict compliance with the terms of the offer.'" *Williams v. Bank of Am., N.A.*, 602 F. App'x 187, 188 (5th Cir. 2015) (quoting *Coleman v. Reich*, 417 S.W.3d 488, 491 (Tex. App.—Houston [14th Dist.] 2013, no pet.)). Where "an offer prescribes the

time and manner of acceptance, its terms in this respect must be complied with to create a contract." *Id.* at 189 (quoting *Town of Lindsay v. Cooke Cnty. Elec. Coop.*, 502 S.W.2d 117, 118 (Tex. 1973)). In this case, elements one and two of Plaintiff's breach of contract claim fail because there was never a valid contract due to Plaintiff's lack of acceptance by nonperformance.

To successfully assert that Defendant breached the TMA, Plaintiff must have accepted Defendant's offer by the terms of the TMA, which consisted of returning the executed TMA in addition to issuing an initial payment of $28,000.00 within fourteen days of receipt. *See* Doc. 11, Def.'s Br., 8; Doc. 10, Def.'s Mot., Ex. 2-2. Plaintiff's dated signature on the TMA reveals that Plaintiff received the letter no later than April 24, 2020, creating an acceptance deadline of at least May 8, 2020. *See* Doc. 1, Notice of Removal, Ex. 3-1, 22. Further, Plaintiff's own exhibits reveal that the $28,000.00 initial payment was not issued until June 1, 2020, weeks after the May 8, 2020 deadline had expired. *Id.* at 25. These facts alone, notwithstanding that Defendant claims it has "no record of ever having received any payments whatsoever from Plaintiff under the [TMA]," defeat Plaintiff's breach-of-contract claim by showing that (1) no valid contract existed because Plaintiff never accepted Defendant's offer of the TMA, and (2) Plaintiff never performed under the TMA according to the terms of the contract. Doc. 11, Def.'s Br., 9. Thus, Defendant was justified in withdrawing the TMA. *See id.* at 8. Accordingly, the Court **GRANTS** summary judgment in favor of Defendant on Plaintiff's breach-of-contract claim and **DISMISSES** the claim **WITH PREJUDICE**.

## IV.

## CONCLUSION

For the reasons stated above, the Court finds that summary judgment is proper on all of

Plaintiff's claims against Defendant. Accordingly, the Court **GRANTS** Defendant's Motion for Summary Judgment (Doc. 10) and **DISMISSES** Plaintiff's petition **WITH PREJUDICE**.

**SO ORDERED.**

**SIGNED: October 26, 2021.**

_____
JANE J. BOYLE
UNITED STATES DISTRICT JUDGE